L'HOMMEDIEU *et al. v.* THE MISCHIEF.[1]

*(District Court, E. D. New York. July 12, 1889.)*

COLLISION—VESSEL AT ANCHOR—LIGHTS.

The steam-tug Q. had taken a tow up Hunter's Point creek, and, having landed it in a proper place on the shore, was lying along-side the tow, stern down the creek, without lights, and with over 100 feet of clear water outside of her. In the early morning the tug M. came up the creek and ran into the Q., doing the damage sued for. The M. claimed that the absence of lights on the Q. was the cause of the collision. *Held,* that under the circumstances the Q. was not required to have a light, and the M. was responsible for the collision.

In Admiralty. Action by Samuel L'Hommedieu and others for damages by collision.

*Wing, Shoudy & Putnam,* for libelants.

*Alexander & Ash,* for claimants.

BENEDICT, J. This is an action to recover damages for injuries sustained by the steam-tug Quickstep in a collision with the steam-tug Mischief, which occurred in Newtown creek, above the first bridge, on the morning of the 8th of December, 1887. The evidence shows that early in the morning, and before light, the Quickstep had taken a tow up the creek. She landed her tow on the Hunter's Point side of the creek, above the first bridge, at a proper place, and at the time of the collision was lying still along-side of the boats, with her stern down the river. She had no lights. While so lying, the Mischief, having got under way below the bridge, passed up the creek near the Hunter's Point side, and struck the Quickstep in her stern, doing the damage sued for. The collision occurred early in the morning. The testimony leaves it somewhat in doubt as to whether, at the time of the collision, there was not light enough to enable the Mischief to see the Quickstep in time to avoid her. Some evidence is to the effect that it was light enough to see a man on the other side of the creek, which was there some 282 feet wide. The only fault on the part of the Quickstep charged by the answer which deserves consideration is that she had no light. I am not aware of any statute which required her to have a light, under the circumstances,—not being in motion, but moored along-side other vessels attached to the shore of Newtown creek, and with over 100 feet of clear water outside of her. Nor can I find that an absence of light on the Quickstep caused the collision. The pilot of the Mischief himself testifies that he saw the Quickstep, but

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

thought she was far enough out in the river for him to go inside of her, and so he changed his course to pass between her and the Hunter's Point side. He immediately discovered his mistake, but it was too late to enable him to swing the other way before reaching the Quickstep. His fault consisted in changing his course, instead of stopping his boat as soon as the Quickstep was discerned, and this fault caused the collision. Let a decree be entered for the libelant, with an order of reference.